Kenneth RIDGEWAY, Plaintiff,

v.

The CITY OF WOOLWICH TWP. POLICE DEPT., The City of Woolwich, New Jersey, and Paul Ladd, Defendants.

Civ. A. No. 94–5557 (JEI).

United States District Court, D. New Jersey.

April 24, 1996.

Kenneth Ridgeway, Camden, NJ, Plaintiff Pro Se.

Frank N. Yurasko, Somerville, NJ, for Defendants.

## OPINION

IRENAS, District Judge:

Plaintiff was shot in the back by Officer Paul Ladd while fleeing on foot after an extensive automobile pursuit. At the time of the shooting, Officer Ladd reasonably believed that the plaintiff had been involved in a robbery using a chemical spray, that he had fled the scene of the crime in a car, and that he had led two police cars on a high speed chase. Officer Ladd also was aware that plaintiff rammed his car into the police vehicles three times, and that after stopping his vehicle in a parking lot, plaintiff bent over in his car as if to pick something up and then fled the scene on foot. Plaintiff's back was to the officer at the time of the shooting, and it is disputed whether Officer Ladd issued any warning to plaintiff of his intention to shoot. Given these facts, which shaped Officer Ladd's perception of the incident, the Court finds that it was not feasible for Ladd to issue a warning before firing at Ridgeway, and that as a matter of law, Officer Ladd's use of deadly force was reasonable and not excessive. The Court will grant defendants' motion for summary judgment on plaintiff's claim against Ladd and on his claim against the city and police department for inadequate training.

## I. PROCEDURAL HISTORY

On November 15, 1994, plaintiff filed a complaint in federal court pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights at the time of his apprehension and arrest due to the defendant officer's use of excessive and deadly force and the police department's failure to properly train its officers in the use of deadly force. Plaintiff seeks compensatory and punitive damages in the sum of two million dollars for mental and physical injuries, as well as exemplary and injunctive relief. Defendants filed a motion for summary judgment on Febru-

ary 27, 1996, arguing that the actions of Officer Ladd in arresting plaintiff do not constitute excessive force, and that plaintiff has not set forth evidence sufficient to establish unconstitutional policies on the part of the police department. Plaintiff responded to the motion on March 13, 1996.

## II. STATEMENT OF FACTS [1]

On December 29, 1992, Kenneth Ridgeway was driving in New Jersey with a friend, James Hall, on his way back to Chester, Pennsylvania. The two men stopped in a Thriftway parking lot. Plaintiff claims that while he moved to the passenger's seat of the car and slept for approximately twenty minutes, his friend went into the store and returned with a woman yelling at him because he had stolen her purse. The defendants claim that plaintiff himself robbed a woman in the parking lot by spraying a chemical substance in her face, grabbing her purse, and then dragging her 50 feet across the parking lot before the strap broke. According to plaintiff, Hall got into the driver's seat upon his return, drove away quickly, and nearly caused an accident before running the car into some bushes at the side of the road, at which time Hall jumped out of the car and ran away. Plaintiff then moved to the driver's side and fled the scene at high speed. Information about the incident was broadcast on the police radio.

Approximately five minutes later, plaintiff noticed a marked police car preparing to pursue him. Logan Township Ptl. George McErlain, who had heard the radio broadcast, was driving the police car. Ridgeway took the first exit from the road. He alleges that he had difficulty controlling his car due to wet and slippery road conditions. Plaintiff did a u-turn and headed back up the highway ramp. He then collided head-on with the police car which had been pursuing him, disabling the police unit. Plaintiff continued

---

**1.** In accordance with Rule 12G, the defendants submitted a Statement of Uncontested Facts. Plaintiff has not objected to this statement of facts and the Court will accept them as uncontested. Plaintiff did not submit an affidavit in opposition to the motion for summary judgment. As he did attach a signed declaration to his brief in opposition to the motion, the Court will adopt

the facts set out therein as plaintiff's statement of facts. The Court notes, however, that the facts asserted by plaintiff in his Complaint cannot be used by him to defeat the summary judgment motion. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

to flee at a high rate of speed. McErlain broadcast these facts on the police radio.

Plaintiff states that he drove off toward Chester instead of stopping because he was scared. After about ten minutes, he saw that another police car was following him. Woolwich Tp. P.O. Paul Ladd was driving this police car. He had heard the police broadcast about Ridgeway and he began pursuing the plaintiff with overhead red lights and siren activated. On Pedrickton Road, near the residence of Dale Hurff, and in his sight, plaintiff made a u-turn and hit Ladd's police car. *Hurff Statement*, Defendants' Exhibit C, at 3–4. According to Hurff, Ridgeway deliberately struck the police car in a head-on collision. *Id.* at 4. Steam and smoke were coming from Ladd's car after the collision. *Id.* at 5. Ladd continued to pursue Ridgeway, followed by Hurff in his pick-up truck. Hurff had decided on his own initiative to assist the police.

Ridgeway proceeded through an intersection without stopping at the stop sign. Eventually he turned into a dead-end parking lot. In the lot, plaintiff did another u-turn and again directly aimed his car at Ladd's vehicle. Ladd tried to back up his car to avoid the collision. Plaintiff hit Ladd, causing plaintiff's car to be "more or less flipped sideways into the parking lot." *Id.* at 7. Hurff then pulled his truck between the police car and Ridgeway's car and trapped plaintiff in the parking lot.

Hurff and Ladd state that they saw Ridgeway lean over in his car toward the floor of the passenger's side before getting out, in a manner consistent with an attempt to locate a weapon. Ladd states that he drew his service weapon and ordered plaintiff out of his car. Hurff states that plaintiff appeared to be trying to point something at the officer, and the officer told plaintiff to halt or he would shoot. Plaintiff claims that Officer Ladd did not give him any warning that he was about to shoot. Plaintiff exited his vehicle and began to run away from Officer Ladd. The time of this incident was approximately 12:00 p.m. to 12:30 p.m.

Ladd fired 10–20 rounds at Ridgeway as he fled. The first bullet hit plaintiff in the back and he began to scream. Ladd continued to fire and plaintiff states that this caused him to keep running to avoid the shots. Hurff states that he heard plaintiff's hollering loudly and clearly as he ran away. Plaintiff jumped over a fence and continued running. He was later found by other police officers unconscious in a garbage dumpster. Plaintiff was arrested and taken to Cooper Medical Center for treatment. After 6 hours of surgery and a 6-day stay in the hospital, plaintiff was taken into custody. A crack pipe was later found in plaintiff's car, leading defendants to believe that plaintiff was under the influence of crack at the time of the incident.

Plaintiff was charged by the Logan Township Police Department with two counts of robbery, possession of a weapon for unlawful purposes, three counts of aggravated assault, two counts of eluding police, and two counts of criminal mischief. Plaintiff pleaded guilty to complicity to commit robbery and eluding police.

Ridgeway began receiving therapy for his injuries three months after the incident, and was still receiving therapy at the time he filed his complaint. A bullet from the incident is still lodged in his back. Plaintiff states that he has limited use of his left arm and shoulder, is in constant pain, and has been diagnosed with acute arthritis. *Plaintiff's Response*, Exhibit A.

## III.  DISCUSSION

### A.  Standard of Review on Summary Judgment

Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91

L.Ed.2d 202 (1986). There is no issue for trial unless sufficient evidence favoring the nonmoving party exists such that a reasonable jury could return a verdict for that party. *Id.*

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

**B. Excessive Force**

■ Ridgeway asserts that Officer Ladd violated his constitutional rights by using excessive force in effectuating his arrest. When a police officer uses more force than necessary with an intention of depriving another of his constitutional rights, the act constitutes a violation of federal law pursuant to 42 U.S.C. § 1983. *See United States v. Delerme,* 457 F.2d 156, 161 (3d Cir.1972). The use of deadly force to effectuate an arrest implicates the Fourth Amendment protection against unreasonable seizures. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ Whether an officer's use of force is "excessive" must be measured under an objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. . . ." *Id.* at 396, 109 S.Ct. at 1872. A court should consider only those facts and circumstances known to the officer at the time of his or her action. *Rodriguez v. City of Passaic,* 730 F.Supp. 1314, 1322 (D.N.J.), *aff'd* 914 F.2d 244 (3d Cir.1990). The Court must balance the degree of intrusion on a citizen's Fourth Amendment rights against the government's

interest in effectuating the detention. *Tennessee v. Garner,* 471 U.S. at 7–8, 105 S.Ct. at 1699. Factors to consider in evaluating an officer's use of force include the severity of the crime at issue, whether the suspect poses an immediate threat to the officer's safety or that of others, and whether the suspect is actively resisting arrest or trying to evade arrest by flight. *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871). Additionally, the Supreme Court has noted that decisions about deadly force "must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain and rapidly evolving." *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872.

■ According to *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), a police officer may not use deadly force to effectuate the arrest of all fleeing felons. The Court found that "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner,* 471 U.S. at 11, 105 S.Ct. at 1701. Generally, the use of deadly force is reasonable under the following circumstances:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if . . . there is probable cause to believe that the suspect committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used to prevent escape, and if, where feasible, some warning has been given.

*Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701.

**1. Was the Use of Deadly Force Reasonable?**

In applying the standards set forth by the Supreme Court, the Court must first consider the reasonableness of Officer Ladd's determination that deadly force was necessary to apprehend Ridgeway. In response to one

of plaintiff's interrogatories, Officer Ladd stated:

> Plaintiff's participation in a robbery by force and violence, and his use of an automobile to assault two police officers, including myself (twice), while in marked police cars, his extended resistance to arrest, his appearing to have reached for an unidentified object that might have been a weapon, and his flight on foot despite my verbal orders and warning and initial shot, gave me reason to believe that the plaintiff was an escaping violent felon who posed a grave danger to the public.

*Answer to Interrogatories,* Defendants' Exhibit D, ¶ 11. An elaboration of the factors raised by Ladd will demonstrate whether his actions were reasonable.

Officer Ladd first learned about Ridgeway over the police radio when he heard that Ridgeway was a suspect in a robbery carried out with a chemical spray, that he had fled the scene of the crime at high speed in a car, and that he had eluded one pursuing police officer by ramming the police vehicle with his car. These facts could have reasonably led Officer Ladd to conclude that Ridgeway was a violent felon who was willing to use deadly force against others. This conclusion would have been reinforced by Ladd's own pursuit of the plaintiff, which included two head-on rammings by Ridgeway.

Officer Ladd also knew that the plaintiff had shown no intention of voluntarily submitting to police authority. Officer McErlain had pursued Ridgeway in a marked police vehicle with sirens flashing, a clear indication that the police wanted Ridgeway to pull to the side of the road, and he responded by ramming the police car and fleeing. He repeated this response to an assertion of police authority when Officer Ladd signaled that Ridgeway should pull over. Ladd could reasonably conclude that Ridgeway was not likely to submit to police authority, and that he would take evasive measures to avoid capture.

Both Hurff and Ladd state that after Ridgeway was trapped in the parking lot, he leaned to the side in his car and reached down, in a manner consistent with picking up a weapon. Given that Ridgeway openly had exhibited a total willingness to commit dangerous acts against police officers, and given his apparent disregard for innocent bystanders—as demonstrated in the suspected robbery and as displayed by the high speeds he drove and his failure to obey a traffic signal—Officer Ladd could have reasonably believed that Ridgeway would be willing to use a weapon to cause harm to Officer Ladd himself, to Dale Hurff who was nearby, or to other innocent bystanders he might encounter as he fled.

■ Given the circumstances as viewed by Officer Ladd at the time of the shooting, his belief in the necessity of deadly force to apprehend Ridgeway was reasonable. Ridgeway was suspected of a robbery that included brutal force against a woman. His actions posed an immediate threat to Officer Ladd, Dale Hurff, and possibly to other innocents. Finally, Ridgeway was actively resisting arrest and trying to evade arrest by flight. *See Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871); *Ford v. Childers,* 855 F.2d 1271, 1275 (7th Cir.1988) (officer's belief that deadly force was necessary was reasonable where suspect (1) had committed felony involving threat of deadly force, (2) was armed with deadly weapon, and (3) was likely to pose danger of serious harm to others if not immediately apprehended). In sum, Ridgeway had demonstrated to Officer Ladd that he was the type of person with a dangerous disposition who would cause fatal injury to others, and it was objectively reasonable for Ladd to make a split-second determination in the heat of the moment that deadly force was necessary to stop Ridgeway.

### 2. Necessity of Deadly Force to Prevent Escape

■ Next the Court must consider whether the use of deadly force was necessary to prevent escape. The police made a prolonged effort to apprehend Ridgeway. Two police officers pursued him in marked police vehicle with lights and sirens activated. Plaintiff did not respond to these commands to pull over and continued his high speed

escape. When Ridgeway's car was blocked into the parking lot, he jumped out of his car and fled on foot. Given plaintiff's failure to ever respond to the signaling of police to pull over, and his immediate response of continuing escape on foot, the Court finds that it was necessary to use deadly force to prevent Ridgeway's escape.

### 3. Feasibility of Warning

■ Finally, *Garner* requires the officer using deadly force to give a warning "where feasible." Ladd and Hurff contend that a warning was issued to plaintiff to halt or the officer would shoot. Ridgeway denies that a warning was issued. Given this genuine factual dispute, the Court will consider whether the issuance of a warning was even feasible. The Court notes that the existence of a warning is only relevant in cases where the use of deadly force is justified.

The Supreme Court is yet to clarify its assertion in *Garner* that, prior to the use of deadly force, a warning should be given "where feasible." In interpreting the meaning of "feasible" in the context of *Garner*, one court has suggested that it means the warning is "capable of being performed without prolonging or compounding the threat presented by a suspect." *Maravilla v. United States*, 867 F.Supp. 1363, 1378 (N.D.Ind. 1994), *aff'd by* 60 F.3d 1230 (7th Cir.1995). In *Liebenstein v. Crowe*, 826 F.Supp. 1174, 1186 (E.D.Wis.1992), police officers were aware that numerous criminal complaints had been filed against the suspect in the past, he was known to be violent when drunk and he was drunk at the time of the incident, he had made threats against the police in the past, and he was a good shot. Noting that the use of "feasible" implies that officers need to make a judgment call when using deadly force, the court concluded that "where it was not clear whether a warning would result in further violence and perhaps bloodshed, it is not apparent that a warning would have been feasible." *Liebenstein*, 826 F.Supp. at 1186. Finally, the Eighth Circuit has concluded that where a suspect was given several warnings during a pursuit, the lack of a warning immediately preceding the shooting did not render the use of deadly force constitutionally unreasonable given the "urgent circumstances" facing the officer. *Krueger v. Fuhr*, 991 F.2d 435, 440 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

■ There are essentially two inquiries to be made by a court in evaluating when it is both feasible and appropriate for a police officer to issue a warning prior to using deadly force to apprehend a fleeing suspect. An officer first should consider whether the suspect is aware that the police are trying to apprehend him, such that he has knowledge that he should stop. For example, if a suspect has just fled from a home at night after burglarizing it, and no police siren or verbal warning would indicate that a police officer is pursuing the person, it would be appropriate for a police officer to issue a warning to give the suspect an opportunity to stop and surrender to police custody prior to the officer's use of deadly force. On the other hand, if police cars with lights and sirens activated are pursuing a suspect, who deliberately rams those police cars, an officer could reasonably conclude that the suspect has knowledge that the police want him to stop and that continued flight might bring about the use of deadly force by the police to capture him.

A court's second inquiry should be what the police might anticipate the suspect's reaction will be if a warning is issued about the impending use of deadly force. If an officer reasonably believes, based on the suspect's prior conduct, that such a warning would not cause the suspect to surrender, but rather would provoke the suspect to engage in violent and life-threatening behavior, or to increase his or her efforts to flee, then a warning is not feasible. In the cool aftermath, it is deceptively easy to say: "What harm can come from giving a warning?" In the split-second reality of a deadly police chase, that warning (whether verbal or a shot in the air) might permit the suspect to turn and fire a weapon or otherwise facilitate his escape, putting at risk innocent police and civilians who he encounters in the path of his flight.

■ Application of these factors to the case at hand establishes that it was not feasi-

ble for Officer Ladd to issue a specific warning to Ridgeway prior to the use of deadly force. First of all, it was clear to Officer Ladd that Ridgeway knew he was being pursued by police. Two police cars with sirens and lights activated had pursued Ridgeway in a manner that made it crystal clear that the police wanted him to stop. In addition, Officer Ladd could have reasonably concluded that Ridgeway knew deadly force might be used against him. He had deliberately eluded two police cars, and used deadly force (in the form of three direct rammings) against two police officers during the chase. His actions were such that Officer Ladd would believe Ridgeway was aware of the type of force that would be employed to stop him.

Secondly, Officer Ladd had been given no indication by Ridgeway that he would submit to police authority upon the issuance of a verbal warning. To the contrary, as the police pursuit continued, Ridgeway continued his escape attempts and demonstrated a willingness to inflict harm and break the law. Ladd reasonably believed that Ridgeway possessed a weapon, and that he would use such a weapon. Based on this information, Ladd could have reasonably concluded that the issuance of a warning would cause the plaintiff to turn and use his weapon in a manner that would threaten the officer or others.

The Court finds that it was not feasible for Officer Ladd to issue a warning prior to his use of deadly force. Thus, while there may be a genuine dispute as to whether a warning was issued by Officer Ladd, it is not a dispute that could lead a jury to find in the favor of the nonmoving party here. The Court will therefore grant defendants' mo-

tion for summary judgment on plaintiff's claim against Officer Ladd for use of excessive force.[2]

## C. Claim Against Woolwich Township and the Woolwich Police Department—Failure to Train as a Constitutional Violation

In light of the Court's determination that Officer Ladd acted reasonably under the circumstances when he shot Ridgeway on December 29, 1992, it need not address plaintiff's failure to train claim. The Court will grant summary judgment to defendants on the claim against the city and police department.

## IV. CONCLUSION

The Court finds that under the circumstances as known to Officer Ladd at the time he shot Ridgeway, the officer acted in a manner that was objectively reasonable. Furthermore, the Court finds that it was not feasible for Officer Ladd to issue a warning about his use of deadly force immediately prior to shooting the plaintiff. As there is no dispute over a genuine issue of material fact, the resolution of which would result in a finding for the plaintiff, defendants' motion for summary judgment on the claim against Officer Ladd will be granted. Summary judgment also will be granted on plaintiff's claim of inadequate training by the city and police department.

---

**2.** It has been established that "government officials performing discretionary functions generally are shielded from liability for civil damages [in a section 1983 action] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Defendants did not move for summary judgment on the basis of qualified immunity and the Court will therefore not make a judgment on this basis, but it does note that it appears that defendants may have a strong basis for summary judg-

ment due to the principle of qualified immunity. While *Garner,* 471 U.S. 1; 105 S.Ct. 1694, clearly established that a law enforcement officer may not use force against a nondangerous suspect causing no threat, the law remains murky as to when the issuance of a warning is feasible when preparing to use deadly force against a dangerous suspect, and what type of warning should be given. Taking the facts here in the light most favorable to plaintiff—that no warning was issued—it seems Officer Ladd may have had a qualified immunity from suit due to the lack of clarity in the law as to when a warning is required before the use of deadly force.